**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| PM HOLDINGS, LLC,<br>an Arizona Limited Liability Company,<br><br>          Plaintiff,<br><br>v.<br><br>HEART OF TEXAS SURGERY CENTER, PLLC,<br>a Texas Professional Limited Liability Company; and<br>HEART OF TEXAS CATH LAB, PLLC,<br>a Texas Professional Limited Liability Company,<br><br>          Defendants. | Civil Action No.: 6:21-cv-00644-ADA |

**CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER**

Before the Court are the Parties' claim construction briefs: Defendants Heart of Texas Surgery Center, PLLC and Heart of Texas Cath Lab, PLLC's ("Defendants" or "HOT") Opening and Reply briefs (ECF No. 24 and 26, respectively), Plaintiff PM Holdings, LLC's ("Plaintiff" or "PM Holdings") Response and Sur-reply briefs (ECF No. 25 and 27, respectively), and the Parties' Joint Claim Construction Statement (ECF No. 28). This matter was referred to the undersigned on April 1, 2022 (ECF No. 29) for disposition.

The Court considered the Parties' briefs and provided preliminary constructions in advance of the *Markman* hearing. A *Markman* hearing was held on April 8, 2022. After further considering the arguments at the *Markman* hearing, the Court notified the parties at the hearing that it would adopt its preliminary constructions as its final constructions. This Order does not alter any of those constructions and enters those final constructions now.

## I. BACKGROUND

Plaintiff alleges that Defendant infringes thirteen claims from U.S. Patent No. 9,322,188 ("the '188 patent") and U.S. Patent No. 9,334,664 ("the '664 patent") (collectively, the "Asserted Patents"). The Asserted Patents share an identical title ("Hybrid Operating Room for Combined Surgical Services in an Ambulatory Surgical Center") and similar, albeit non-identical, specifications. The Asserted Patents generally claim a facility containing at least a hybrid operating room, an imaging device, an operating table, a power room, an air change system, a conduit, and a door. In claim 16 of the '188 Patent, the facility is a stationary ambulatory surgical center within a building. In claim 22 of the '664 Patent, the claimed facility is the building.

Figure 1 of the Asserted Patents (reproduced below) "illustrates a cross-section of an ambulatory surgical center according to certain embodiments of the present invention." '664 Patent at 4:9-10; '188 Patent at 4:8-10. The "ambulatory surgical center" is labelled 100 in Figure 1, the "hybrid operating room" is labelled 105, and the power room is labelled 135. In Figure 1, "[t]he ambulatory surgical center 100 can further include a power room 135 adjacent to the operating room." '188 Patent at 4:59-60; '664 Patent at 5:6-7.



**Figure 1 of the Asserted Patents**

Figure 2 of the Asserted Patents describes a method of manufacturing an ambulatory surgical center, and in this embodiment, the power room is described as being "adjacent" the operating room. ('188 Patent, Figure 2; '664 Patent, Figure 2.):



**Figure 2 of the Asserted Patents**

## II. LEGAL STANDARDS

### A. Claim Construction Generally

3

The general rule is that claim terms are given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.*

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.,* 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). But for claim terms with less-apparent meanings, courts consider "'those sources available to the public that show what a person of skill in the art would have

4

understood disputed claim language to mean[,] [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116).

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "Distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).  Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

### B. Whether the Preamble is Limiting

Courts presume that the preamble does not limit the claims. *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)) ("'Generally,' we have said, 'the preamble does not limit the claims.'"). But "[i]n general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)). "Conversely, a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" *Catalina*, 289 F.3d at 808 (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)). The Federal Circuit has provided some "guideposts" regarding whether the preamble is limiting: (1) preamble provides antecedent basis, (2) preamble is essential to understand limitations or terms in the claim body, (3) preamble recites "additional structure or steps underscored as important by the specification," and (4) "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Catalina*, 289 F.3d at 808–09.

### C. Indefiniteness

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "A patent must be precise enough to afford clear notice of what is claimed," but that consideration must be made while accounting for the inherent limitations of language. Id. at 908–09. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370, 1377 (Fed. Cir. 2017).

### III.    THE DISPUTED CLAIM TERMS

The parties dispute the constructions of four terms in the Asserted Patents and have agreed to the construction of one term. All of the claim terms at issue (italicized below) appear in Claim 16 of the '188 Patent, which claims:

> **16.** A stationary *ambulatory surgical center,* comprising:
> a hybrid operating room;
>
> an imaging device disposed in the *hybrid operating room*
> and configured to use radiation, wherein the hybrid operating
> room is configured to shield the radiation from use
> of the imaging device;
>
> an operating table disposed in the hybrid operating room;
> a power room *near* the operating room, wherein the power
> room comprises a power supply for the imaging device;
>
> an air change system, wherein the air change system is
> configured to provide at least six air changes per hour to
> the hybrid operating room;
>
> a *conduit* from the power room to the imaging device
> configured to deliver power to the imaging device; and
> a door connecting the hybrid operating room to at least one
> hallway,

> wherein a building for the ambulatory surgical center is *initially constructed to conform to International Building Code (IBC) Class B standards*.

'855 Patent at 8:17-35.

The parties have agreed to the following construction for the term "hybrid operating room," which the Court now adopts.

| Claim Term | Agreed Construction | Court's Construction |
|---|---|---|
| "hybrid operating room"<br><br>('188 Patent Claims 1, 4, 11, 12, 15, 16; '664 Patent Claim 22) | an operating room with combined surgical and fixed imaging services | an operating room with combined surgical and fixed imaging services |

The parties continue to dispute the construction of the remaining four terms:

### A. "ambulatory surgical center" ('188 Patent Claims 1, 4-6, 9-16)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite;<br><br>Alternatively, the term "ambulatory surgical center" includes not only government-licensed ambulatory surgical centers, but also includes clinics, outpatient surgical centers, and the like, and other similar structures. |

The term "ambulatory surgical center" appears in the preambles of claims 1, 4-6, and 9-16 of the '188 Patent. Defendants do "not take a position as to whether the term 'ambulatory surgical center should be treated as a claim limitation," but to the extent that the Court were to find that it is, Defendants believe that the term is indefinite, or in the alternative, the above proposed construction should apply. ECF No. 24 at 5. For their part, Plaintiffs contend that the term is limiting. ECF No. 27 n.1. The Court agrees and finds that the term "ambulatory surgical

8

center" in the preambles to be limiting, as it provides antecedent basis for "*the* ambulatory surgical center," which appears later in the claims. *See Catalina*, 289 F.3d at 808–09.

      Defendants also believe the term "ambulatory surgical center" is indefinite for two main reasons.  First, Defendants claim that "the term has no 'ordinary and customary meaning' to a person of skill in the art at the time of the invention" because there is not a "specific definition" in the Asserted Patents or Prosecution Histories.  ECF No. 24 at 4-5.  Second, Defendants claim the term is indefinite because "a person of skill in the art would know that the term has different statutory and regulatory definitions in virtually all 50 states as well as under federal agency regulations, and the Asserted Patents provide no guidance as to which definition is claimed." ECF No. 24 at 5.  Defendants claim that the term "can refer to many, many different types of healthcare entities and physical structures, depending in large part on the jurisdiction in which the physical facility is located." *Id*. at 6.  In support, Defendants provide the Declaration of Kara Newbury (ECF No. 24-4) and argue that "an ambulatory surgical center can refer to a physical structure, an entity, a licensure/certification/accreditation status, or any combination thereof." ECF No. 24 at 7-8.  HOT states that the term is indefinite because it is "subject to future rulemaking, and therefore the definition is subject to change over time as the statutes and regulations are amended."  ECF No. 27 at 8. Finally, while Defendant concedes that the specifications of the Asserted Patents "contain a general, non-definitional description of types of healthcare facilities that the patentee indicated would be included," they argue that the inclusion of the phrase "and the like" in the specification renders the term "very broad" and "would presumably include almost any healthcare facility." *Id*. at 10.

Plaintiff cites to that same passage in the specification (amongst others) as evidence that there is sufficient guidance in the patents to provide reasonable certainty to a person of ordinary skill in the art ("POSITA"). ECF No. 25 at 4. The passage states that:

> ASCs can herein or otherwise be described in various ways. For example, ASCs can also be referred to as clinics, outpatient surgical centers, and the like. Thus, herein or otherwise the term ASC can refer generally to ASCs, clinics, outpatient surgical centers and similar structures.
>
> '188 Patent 2:65 –3:2.

Plaintiff also argues that the Newbury declaration "should not be considered" because it is "a self-serving expert testimony that is at odds with the claims and the specification." ECF No. 25 at 5-6.

After careful consideration of the parties' briefing and arguments made at the *Markman* hearing, the Court finds Defendant's arguments to be unpersuasive. In their Reply, Defendants concede that there is no support in the patent for their proposed alternative construction. *See* ECF No. 26 at 5 ("'government-licensed…does not appear anywhere in the Patents-in-Suit or their intrinsic evidence'…. Fair enough."). The Court agrees. Nor does the Court find Defendants' indefiniteness argument persuasive. First, there is ample support in the specification describing what is (and what is not) an ambulatory surgical center. *See e.g.* '188 Patent 2:65 – 3:2. The specification also refutes Defendants' argument that an ambulatory surgical center could be "almost any healthcare facility" and specifically explains how ambulatory surgical centers are different from facilities like hospitals. *Id.* at 1:19-3:2 and 2:43-3:2. These examples from the Patent itself also directly contradict Defendants' assertion that the term could also constitute non-physical structures, such a "business entity, or a certification /accreditation /licensure status." ECF No. 24 at 8.

Finally, the Court finds no support for Defendants' argument that "it is that unclear whether the scope of 'ambulatory surgical center' in the Asserted Patents encompasses any state or federal statute, regulation, or agency rule." ECF No. 24 at 8.  Nowhere in the specification does patentee refer to regulations or statutes.  Defendant conceded as much at the hearing and could only point to the following statement as intrinsic support for its argument: "By contrast, conventional ambulatory surgical centers (ASCs) can be constructed in office buildings. These buildings have *various code requirements*, but typically these requirements are much less strict." '188 Patent at 2:43-36. (emphasis included).   The Court also finds it unnecessary to use extrinsic evidence to define this term.  This term is not difficult or too technical in nature such that a construction would help the jury's understanding of it. *Kroy IP Holdings, LLC v. Safeway, Inc.,* No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014).

Defendants' expert declaration also does not provide any intrinsic support for her arguments.  For that matter, the declaration doesn't provide *any* citations or references to intrinsic or extrinsic sources.  The Court finds that the patentee did not act as his own lexicographer, nor did he disavow the full scope of the claim term or incorporate limitations into the claim. *Thorner,* 669 F.3d 1362, 1365 (Fed. Cir. 2012).  For at least the foregoing reasons, the Court rejects Defendants' construction and will give this term its plain and ordinary meaning.

**B. "initially constructed to conform to International Building Code (IBC) Class B standards" ('188 Patent Claims 1, 16; '664 Patent Claim 22)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Defendants argue that the term is indefinite because "'IBC Class B standards' has no 'ordinary and customary meaning' to a person of skill in the art at the time of the alleged invention; and 'IBC Class B standards' can refer to multiple different versions of building 'standards,' depending on the IBC edition that is to be consulted." ECF No. 24 at 11. Defendants offer the expert declaration of Keith Bailey for the proposition that the "IBC is not a static document" and it is not clear whether the occupancy classifications and the corresponding building standards to be applied under claims 1 and 16 of the '188 Patent should be taken from the 2006 IBC, the 2009 IBC, 2012 IBC, or some other edition of the IBC that was published earlier than 2006." *Id*. at 11-12.

Plaintiff contends that the term is not indefinite simply because a standard is subject to later revision or amendment. ECF 25 at 7-8. The Court agrees. See e.g. *Internet Machs. LLC v. Alienware Corp.*, No. 6:10-cv-023, 2011 U.S. Dist. LEXIS 163046, at *11 (E.D. Tex. June 23, 2011) ("There is no dispute that a version of the PCI Express standard existed when the application for the '552 Patent was filed. The claims are not indefinite simply because the standard is subject to later revision.") The parties agree that an IBC standard existed at the time of the priority date (March 19, 2014), and that the most current version of the IBC as of that date would have been the 2012 IBC. ECF No. 24 at 13, ECF No. 25 at 8. Compliance with the provisions of 35 U.S.C. § 112 is determined as of the filing date of the application. *See W.L. Gore Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1556 (Fed. Cir. 1983). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question *at the time of the invention, i.e.*, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*) (emphasis added). The Court finds that the patentee did not act as his own lexicographer,

nor did he disavow the full scope of the claim term or incorporate limitations into the claim. *Thorner,* 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Court rejects Defendants' indefiniteness argument and will give this term its plain and ordinary meaning that it had as of the priority date (March 19, 2014).

### C. "conduit" ('188 Patent Claims 1, 16; '664 Patent Claim 22)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a pipe or tube through which something (such as conducting wire) passes." |

Defendants argue the term "conduit" "is inconsistent with the way the term is used in the Asserted Patents" and proffers several dictionary definitions in support of its construction. ECF No. 24 at 15-16. Plaintiffs claim that this construction ignores the use of the term in the context of the entire claim, that the word "configured" (and the phrase "configured to deliver power" modify the word "conduit." ECF No. 25 at 11-12. Plaintiff further argues that "the claims in question do not literally state that the conduit itself delivers the power." *Id.*

Defendant did not argue this term at the *Markman* hearing, and thus the Court adopts its preliminary construction (the plain and ordinary meaning) as final. The Court finds that the patentee did not act as his own lexicographer, nor did he disavow the full scope of the claim term or incorporate limitations into the claim. *Thorner,* 669 F.3d 1362, 1365 (Fed. Cir. 2012). Moreover, this term is not difficult or too technical in nature such that a construction would help the jury's understanding of it. *Kroy IP Holdings, LLC v. Safeway, Inc.,* No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014). The Court rejects Defendants' construction and will give this term its plain and ordinary meaning.

D. "near" ('188 Patent Claim 16; '664 Patent Claim 22)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Defendants argue the term "near" is indefinite because it is a "term of degree" and the "intrinsic record is devoid of a specific definition of 'near.'" ECF 24 at 13-14. In their Reply (and at the *Markman* Hearing), Defendants rely on *In re Neurografix ('360) Patent Litigation*, 201 F. Supp. 3d 206 (D. Mass. 2016) and *Advanced Aero. Techs., Inc. v. United States*, 124 Fed. Cl. 282, 292 (2015) as cases where Courts have found the term "near" to be indefinite.

Plaintiff rightly conceded at the *Markman* hearing that the term "near" is indeed a term of degree. Plaintiffs argue however, that by looking Figures 1 and 2 of the Patents, "a POSITA would understand that the power room must be in close proximity to provide the power to the operating room." ECF 25 at 8-9.

The Court agrees with Plaintiffs. When a "word of degree" is used, this court must determine whether the patent provides "*some* standard for measuring that degree." *Enzo Biochem Inc. v. Applera Corp.*, 599 F.3d 1325 at 1332 (Fed.Cir.2010) (emphasis added). The Court finds that, in the context of the specification and Figures 1 and 2, the term "near" "inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S.Ct. at 2129. The Court finds the cases *In re Neurografix* and *Advanced Aero. Techs., Inc.* to be distinguishable. In *In re Neurografix,* the Court found "near" to be indefinite "[b]ecause *nothing* in the '360 patent sheds light on the limits of proximity required by the 'near' term." 201 F. Supp. 3d 206, 223 (D. Mass. 2016) (emphasis added). In *Advanced Aero. Techs., Inc* , the term "near" was held indefinite partially due to the fact that a second term (the "point of engagement") was also indefinite, as well as the fact that "the only context" was a single

(largely) unhelpful sentence. 124 Fed. Cl. 282, 292. The Court finds the situation at hand to be more analogous to *Innovative Display Techs. LLC v. Hyundai Motor Co.*, No. 2:14-CV-201-JRG, 2015 WL 2090651, at *17 (E.D. Tex. May 4, 2015), where Judge Gilstrap ruled "on balance, the specification provides sufficient context for a person of ordinary skill in the art to understand the disputed terms." As both parties have noted, the caselaw on the definiteness of "near" is patent-specific and depends on context gleaned from the specifications and figures therein. As stated at the hearing, the Court does not believe that the Defendants have proven the term "near" to be indefinite by the elevated "clear and convincing evidence" standard. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd*., 844 F.3d 1370, 1377 (Fed. Cir. 2017). The Court therefore hereby expressly rejects Defendants' indefiniteness argument, and no further construction is necessary.

## IV. CONCLUSION

The Court hereby ADOPTS the following Claim Constructions.

| Claim Term | Court's Construction |
|---|---|
| "ambulatory surgical center"<br><br>('188 Patent Claims 1, 4-6, 9-16) | Plain and Ordinary Meaning.<br><br>The Court finds that this term is not indefinite and that the preamble is limiting. |
| "initially constructed to conform to International Building Code (IBC) Class B standards"<br><br>('188 Patent Claims 1, 16; '664 Patent Claim 22) | Plain and Ordinary Meaning.<br><br>The Court finds that this term is not indefinite. |
| "conduit"<br><br>('188 Patent Claims 1, 16; '664 Patent Claim 22) | Plain and Ordinary Meaning. |

| Claim Term | Court's Construction |
|---|---|
| "near"<br><br>('188 Patent Claim 16; '664 Patent Claim 22) | Plain and Ordinary Meaning.<br><br>The Court finds that this term is not indefinite. |

The Court further ORDERS each party not to refer, directly or indirectly, to its own or any other party's claim construction positions in the presence of the jury. Likewise, the Court ORDERS the parties to refrain from mentioning any part of this opinion, other than the actual positions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the positions adopted by the Court.

**SO ORDERED,** this 26th day of April, 2022.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE